## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JUAN LORENZO BARELA, JR., | § | |
| ID # 58747-051, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:18-CV-2353-G-BH |
| | § | |
| M. UNDERWOOD, WARDEN, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendants' Motion to Dismiss*, filed December 3, 2018 (doc. 14). Based on the relevant filings and applicable law, the motion should be **GRANTED**, and the plaintiff's claims should be dismissed.

### I. BACKGROUND

Federal prisoner Juan Lorenzo Barela, Jr., (Plaintiff) sues M. Underwood (Warden) and E. Johnson (Unit Manager) for violations of his Fifth and Eighth Amendment rights, and A. Guzman (Counselor) (collectively, Defendants) for violations of his First Amendment rights. (doc. 3 at 1, 3.)[2] He seeks monetary damages, declaratory relief, and injunctive relief. (*See* doc. 25 at 28.)[3]

Plaintiff is currently incarcerated in the Federal Correctional Institute at Seagoville (FCI-Seagoville), Texas. (doc. 3 at 3.) He is obese and diabetic, has a parathyroid condition, and suffers from neuropathy and back pain, which requires him "to be housed on the bottom floor and in a lower bunk, according to the determinations of Health Services . . . at FCI-Seagoville." (*Id*. at 6.) The

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] Although Plaintiff's complaint does not identify the type of relief he is requesting, his response clarifies the relief he seeks. (*See* doc. 25 at 28.)

housing unit in which he is currently confined does not have air conditioning, and he has been "forced to live on the top floor in a 14-man day[ ]room . . . with only one fan." (*Id.*) He alleges that temperatures in his unit regularly reach 110 degrees, causing him extreme physical distress and keeping him from sleeping at night. (*Id.*) He claims that inmates die at the facility "every year as a result of these conditions," which are worse for him due to his medical conditions. (*Id.*)

In July 2018, Plaintiff repeatedly asked Unit Manager "for permission to move to an air-conditioned unit," but his requests were consistently denied. (*Id.*) On July 22, 2018, he wrote to Warden "to explain this fact and to request air conditioning in the day[ ]room where [he was] housed, because the heat adversely affected his ability to manage his diabetes." (*Id.*) On July 24, 2018, the Warden responded that "the air conditioner [was] working in the day rooms," which Plaintiff asserts was false and non-responsive to his request. (*Id.*) Plaintiff then "proceeded with the [a]dministrative [r]emedy process" by filing a BP-9 form on July 31, 2018. (*Id.*) On August 19, 2018, after "the time limit for a response had passed without answer," Plaintiff asked Counselor for a BP-10 form to proceed to the next step of the administrative process, and Counselor initially provided him the form. (*Id.*) After asking Plaintiff why he needed the form, Counselor took it back and said that "things go slow around here," and that he was not going to give Plaintiff the BP-10 form. (*Id.*)

Plaintiff claims that "the excessive heat to which [he is] forcibly exposed is a potential violation . . . of [his] Eighth Amendment right to freedom from cruel and unusual punishment," as well as his "Fifth Amendment right to protection from the taking of [his] life or any liberty interest without due process of law." (*Id.*) He asserts that the Warden and Unit Manager deliberately refused "to afford due consideration to [his] serious needs." (*Id.*) He also claims that Counselor

violated his First Amendment rights "with respect to [his] ability to pursue grievances and access the courts . . . ." (*Id.*) Plaintiff alleges that he has "completed all *available* administrative remedies . . . ." (*Id.* (emphasis added).)

On December 3, 2018, Defendants moved to dismiss all of Plaintiff's claims for failure to state a claim, failure to overcome their qualified immunity defense, and failure to exhaust administrative remedies. (docs. 14; 15.) With a timely-filed response and reply, the motion is now ripe for recommendation. (docs. 24-25; 28.)[4]

## II. RULE 12(b)(6)

Defendants move to dismiss all of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6). (doc. 15 at 7.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

---

[4] After obtaining leave of court, Plaintiff filed a supplemental response, and Defendants filed a supplemental reply. (*See* docs. 32; 34.)

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

### III. *BIVENS*

Defendants argue that all of Plaintiff's constitutional claims under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), should be dismissed. (docs. 14 at 1; 15.)[5]

---

[5] Although Plaintiff's complaint does not identify a specific basis for his constitutional claims, his claims may be liberally construed as arising under *Bivens* because he is alleging unconstitutional actions by federal actors. *See Bivens*, 403 U.S. 388; *Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18,

4

In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. *Bivens* is "the counterpart to 42 U.S.C. § 1983," and it extends the protections afforded under § 1983 to parties injured by federal actors. *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006); *see also Boyd v. Driver*, 579 F.3d 513, 515 n. 5 (5th Cir. 2009) (per curiam) (a *Bivens* action is otherwise coextensive with, and indistinguishable from a § 1983 claim); *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (per curiam).[6]   The Fifth Circuit has recognized that a plaintiff may request "injunctive relief from violation of his federal constitutional rights." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Ramsey v. United States*, No. 3:96-CV-3358-G, 1997 WL 786252, at *2 n.2 (N.D. Tex. Dec. 11, 1997) (a plaintiff may seek injunctive or declaratory relief in addition to monetary relief in a *Bivens* action).   Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983— the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

## A.    Exhaustion of Administrative Remedies

Defendants first argue that all of Plaintiff's claims should be dismissed for failure to exhaust

---

2010) ("Because *pro se* complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a *pro se* plaintiff."  (internal citation omitted)).

[6] Unlike the multitude of claims that may be brought against state officials under 42 U.S.C. § 1983, however, "a *Bivens* remedy is not available for all constitutional violations." *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017); *see also Iqbal*, 556 U.S. at 675–76 ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'") (citations omitted).

administrative remedies.  (doc. 15 at 11, 14-17.)

Under the Prison Litigation Reform Act of 1996 (PLRA), "'[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"[7]  *Davis v. Fernandez*, 798 F.3d 290, 294 (5th Cir. 2015) (quoting 42 U.S.C. § 1997e(a)).  Exhaustion under the PLRA is mandatory, and the requirement is strictly construed.  *See Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003).  It is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings, such as money damages.  *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001).  The PLRA's exhaustion requirement applies to *Bivens* actions.  *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citing *Porter*, 534 U.S. at 524).

Courts do not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah Cty.*, 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted), *cert. denied*, 541 U.S. 1012 (2004). "[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, [the Fifth Circuit has] required prisoners to exhaust available remedies properly." *Dillon*, 596 F.3d at 268. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

---

[7] Courts interpret the term "with respect to prison conditions" broadly, finding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

properly exhaust." *Jones*, 549 U.S. at 218 (internal quotation marks and citations omitted); *see Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 788 (5th Cir. 2012) ("In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes."); *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." (citations omitted)); *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) (per curiam) ("It is the prison's requirements, not the [PLRA], that define the requirements of exhaustion"); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

### 1.    Administrative Review Process

The administrative review process for federal inmates is set out at 28 C.F.R. § 542.10 *et seq.*, and includes a formal three-step process for seeking relief.  Prior to the three-step formal process, an inmate informally presents an issue of concern utilizing a BP-8 form, but there are several cases in which this is not required.  28 C.F.R. § 542.13.  The first formal step of the process is the filing of a written administrative remedy request through a BP-9 form within 20 days of the complained of incident.  *Id*. at § 542.14.  BP-9 forms are ordinarily available from an inmate's assigned counselor, and must be returned to the issuing counselor completed, dated, and signed.[8]  *Id*. at § 542.14(c)(1), (4); *see Miller*, 2008 WL 635552, at *3 (discussing the written procedures for the administrative review process at FCI Seagoville).  After receiving the completed BP-9 form, the

---

[8] According to FCI Seagoville's established local procedures, BP-9 forms are only available from counselors. *See* Institution Supplement SEA 1330.13(g), *Administrative Remedy Program* (May 31, 2006).

counselor is required to deliver the form to the Administrative Remedy Clerk by the next business

day, and the form is subsequently presented to the warden to issue a response. *Miller*, 2008 WL

635552, at *4; *see* 28 C.F.R. § 542.14.  If the inmate is not satisfied with the response to his initial

request, he may appeal by filing a BP-10 form with the appropriate regional director within 20 days

of the warden's response.[9]  28 C.F.R. § 542.15(a).  If the inmate is dissatisfied with the regional

director's response, he may then appeal that response by filing a BP-11 form with the general

counsel within 30 days.  *Id*.  Filing an appeal with the general counsel is the final step in the

administrative review process.  *Id*.  The deadlines may be extended if the inmate can show a valid

reason for his delay in filing.  *Id*. at §§ 542.15(a), 542.14(b).

### 2.    Pleading Requirements

Defendants argue that the face of Plaintiff's complaint establishes that he did not exhaust his

administrative remedies because "he does not allege any facts that infer the grievance process was

unavailable."  (doc. 15 at 14-16.)  They note that he has not alleged "that he requested the form

multiple times, requested it from another officer, or unsuccessfully attempted to obtain it by other

means." (*Id*. at 15-16.)  They contend that Counselor's "failure to provide a grievance form does not

absolve [Plaintiff] of his obligation to exhaust his administrative remedies or make the grievance

process 'unavailable.'" (*Id*. at 16.)

Although mandatory, exhaustion "is not a pleading requirement that plaintiffs must satisfy

at the outset of litigation." *Dillon v. Rogers*, 596 F.3d 260, 272, 272 n.3 (5th Cir. 2010) (citing *Jones*

*v. Bock*, 549 U.S. 199, 211–12 (2007); *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004)).

---

[9] The inmate may also bypass the warden/institutional stage and file his request directly with the regional
director.  28 C.F.R. § 542.14(d).

A court "can only dismiss for failure to state a claim based on a failure to exhaust when the face of the complaint makes clear that the plaintiff did not exhaust." *LaBeouf v. Manning*, 575 F. App'x 374, 378–79 (5th Cir. 2014) (citing *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)).

Here, Plaintiff alleges that he repeatedly asked his Unit Manager to be moved to an air-conditioned unit in July of 2018, but his requests were consistently denied. (doc. 3 at 6.)  He then wrote to Warden on July 22, 2018 and requested air conditioning for the day room where he was housed, but Warden responded two days later that the air conditioner was working in the day room. (*Id.*)  Following this response, Plaintiff filed a BP-9 form on July 31, 2018.  (*Id.*)  On August 19, 2018, he asked Counselor for a BP-10 form to move forward with the next step in the administrative review process.  (*Id.*)  Counselor initially provided him with the form but "took it back from [him]" after Plaintiff told him "what it was for."  (*Id.*)  Counselor told Plaintiff that "things go slow around here," and that he was not going to give him the BP-10 form.  (*Id.*)

Plaintiff argues that he was unable to obtain the BP-10 form from another officer or by any other means because he is only allowed to obtain the form from Counselor under the prison's policies.  (doc. 25 at 6.)  He also argues that Counselor's statement that "things go slow around here" was misinformation used to interfere with him filing his complaints.  (*Id.* at 7.)  He contends that when Counselor refused his request for a BP-10 form, he made "a fully-informed decision to short-circuit" the status of Plaintiff's grievance.  (*Id.* at 8.)  He also claims that rather than submitting the BP-9 form immediately after it was filed with him on July 31, 2018, Counselor only submitted it after Plaintiff requested the BP-10 form, causing further interference with the grievance

procedure.[10]  (*Id.* at 9.)  Once Counselor denied him the BP-10 form, "he was without recourse" because that was "the only staff member with whom he [was] allowed to interact [with] for the acquisition of such forms . . . ."  (*Id.*)

Inmates "need not exhaust all administrative remedies;" they need only exhaust "those that are 'available' to them," and "[w]henever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him."  *Davis*, 798 F.3d at 294–95 (citations omitted); *see Cowart v. Ervin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The PLRA requires prisoners to exhaust such administrative remedies as are available prior to filing a § 1983 action regarding prison conditions." (citations and internal quotation marks omitted)).  "[I]nterference with an inmate's pursuit of relief"—such as, "through machination, misrepresentation, or intimidation"—"renders the administrative process unavailable."  *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (collecting cases); *see Davis*, 798 F.3d at 295 ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process"); *Miller v. Berkebile*, No. 3:07-CV-0712-B ECF, 2008 WL 635552, at *8 (N.D. Tex. Mar. 10, 2008) ("Refusals to provide necessary forms to exhaust administrative remedies" can "render the remedies unavailable to the prisoner.").

Plaintiff's "specific and detailed allegations that he sought to file" a BP-10 form after filing

---

[10] In their reply, Defendants assert that Plaintiff's response demonstrates that he abandoned the administrative process because he "concedes that the Warden received his BP-9 on August 23, 2018."  (doc. 28 at 2.)  Plaintiff's allegations state that he provided Counselor the BP-9 on July 31, 2018, but Counselor held on to the form and only submitted it on that later date after Plaintiff requested a BP-10 form to follow up with his grievance.  (doc. 25 at 9.)  Under the regulations, Counselor was required to deliver the form the next business day.  *See Miller*, 2008 WL 635552, at *4; *see also* 28 C.F.R. § 542.14.  Taking these allegations as true, they show that Plaintiff did not abandon the process, but rather that Counselor's actions in failing to deliver the BP-9 form the next business day after he received it caused the form to be received on the later date.

his BP-9 form, but that Counselor refused to provide him with the form, suffice to raise the inference that he was essentially prevented from exhausting his administrative remedies, making those remedies unavailable to him. *Lineberry v. United States*, No. 5:08cv72, 2009 WL 499763, at *3 (E.D. Tex. Feb. 27, 2009) (citing cases); *see Miller*, 2008 WL 635552, at *8 (stating that the refusal to provide grievance forms can render administrative remedies unavailable). His allegations sufficiently show that once Counselor denied him the form, he believed "he was without recourse" because he could not go to any other staff member for the form. (doc. 25 at 9.) Accepting Plaintiff's well-pleaded facts as true, as the Court must, he has sufficiently pled that Counselor rendered his administrative remedies unavailable by refusing to provide him with the BP-10 form upon his request, and Defendants have therefore not met their burden to prove that Plaintiff "did not exhaust administrative remedies that were actually available to him." *Davis*, 798 F.3d at 294–95 (citations omitted); *Lineberry*, 2009 WL 499763, at *13 (denying the defendants' motion to dismiss for failure to exhaust where the plaintiff sought to file grievance forms but the prison officials failed to give him a response); *Miller*, 2008 WL 635552, at *8 (finding that the refusal to accept a BP-9 form "rendered administrative remedies unavailable to the petitioner."); *see also Ross*, 136 S. Ct. at 1860 (collecting cases) (stating that interference with the grievance process "renders the administrative process unavailable.").

**B.    Qualified Immunity**

Defendants also argue that all of Plaintiff's claims against them should be dismissed based on qualified immunity. (doc. 15 at 17, 19, 28-30.)

A governmental employee who is sued for a constitutional violation pursuant to *Bivens* may assert the affirmative defense of qualified immunity. *See Bunting v. Mellen*, 541 U.S. 1019, 1022

(2004). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When qualified immunity is invoked, the plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). To satisfy that burden on a motion to dismiss, the plaintiff must allege facts showing that a defendant violated his constitutional rights and that the violation was objectively unreasonable. *Club Retro, L.L.C.*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). It is well-settled that the burden does not shift to the plaintiff to demonstrate the inapplicability of the qualified immunity defense *until* the defendant has asserted it, however. *See Club Retro, L.L.C.*, 568 F.3d at 194.

The Supreme Court has held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998). The Fifth Circuit has held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). This district has found that "after *Schultea*, it appears . . . that a Rule 12(b)(6) motion to dismiss on

the ground of qualified immunity is no longer viable." *Johnson v. Anderson*, No. 4:03-CV-1355-Y, 2004 WL 1908212, at *1 n.1 (N.D. Tex. Aug. 2004) (citing *Schultea*, 47 F.3d at 1430); *accord McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007) ("Courts in this district have denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense."); *Pena v. Dallas Cty., Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *4 (N.D. Tex. June 26, 2013) ("In the Court's view, however, a defendant in the Fifth Circuit must assert qualified immunity in an answer, not a motion."); *see, e.g., Roberts v. Kirkpatrick*, No. 3:14-CV-812-N, 2016 WL 625055, at *3-4 (N.D. Tex. Jan. 25, 2016), *adopted by* 2016 WL 614020 (N.D. Tex. Feb. 16, 2016) (denying motion to dismiss on grounds of qualified immunity because the plaintiff was not required to anticipate a qualified immunity defense by providing greater specificity in his initial pleading). Because Defendants raise their qualified immunity defense in a motion to dismiss, their motion on this basis should be denied without prejudice. *See Pena*, 2013 WL 11299229, at *4 (denying a 12(b)(6) motion to dismiss on grounds of qualified immunity "without prejudice to refiling at the proper time") (citing *Giardina v. Lawrence*, 354 F. App'x 914, 915 (5th Cir. 2009)).

**C.    Constitutional Violations**

Defendants also move to dismiss on grounds that Plaintiff has not sufficiently asserted violations of his constitutional rights. (doc. 15 at 17-19, 24-28.)

**1.    Access to Courts**

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731,

741 (1983); *see also Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses") (quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare*, 925 F.2d 844, 851 (5th Cir. 1991)). Access-to-court claims are typically found in the context of prisoner litigation. *See Collinson v. City of Philadelphia*, No. 12-6114, 2015 WL 3622728, at *9 (E.D. Penn. June 10, 2015) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (holding that prisoners have a constitutionally recognized right to access to the courts)). The right of access to courts does not guarantee any "particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356; *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id*. at 353–54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of access to the courts is not a "freestanding right," it is necessary that he demonstrate actual injury

14

resulting from the alleged denial of access. *Id*. at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed denials of access to courts. *Id*. at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "'nonfrivolous,' 'arguable' [ ] claim" was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353). A plaintiff must describe the claim well enough to establish that its "arguable nature . . . is more than hope." *Id*. at 416 (internal quotation marks omitted).

Here, Plaintiff alleges that Counselor "violated [his] rights under the First Amendment with respect to his ability to pursue grievances and access the courts" by refusing to provide him with the BP-10 form to complete the next step in the administrative remedy process. (doc. 3 at 6.) "Plaintiff, however, cannot state a First Amendment claim for denial of access to courts because he has alleged nothing to suggest he was actually prevented from presenting . . . his underlying claims to this [C]ourt." *West v. Putman*, No. 2:18-CV-71, 2018 WL 4211749, at *4 (S.D. Tex. Apr. 12, 2018). It is up to federal courts to "ultimately determine whether a prisoner has exhausted his available administrative remedies or whether there are any exceptions to this exhaustion requirement," and the mishandling of grievance processes by a prison official "does not give rise to a First Amendment claim for denial of access to the courts." *Id*. (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)); *Croom v. Doe*, No. 17-CV-632-NJR, 2017 WL 3335762, at *2 (S.D. Ill. Aug. 3, 2017).

Because Counselor's alleged action of refusing to provide Plaintiff with the necessary grievance form "did not deprive him of his ability to bring his underlying constitutional claims in federal court," Plaintiff has failed to state a cognizable access to courts claim under the First

Amendment.[11]  *West*, 2018 WL 4211749, at \*4. (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  This claim should therefore be dismissed for failure to state a claim.  *See id.* (recommending dismissal of the plaintiff's access to courts claim for failure to state a claim); *Newsome v. Fairly*, No. 1:17-CV-280-HSO-JCG, 2019 WL 2496663, at \*6 (S.D. Miss. Jan. 28, 2019) (finding that the plaintiff was not denied access to courts where he had filed numerous documents before the court "presenting a coherent picture of his claims."); *see also Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) (holding that the "failure to provide . . . grievance forms and respond to . . . grievances did not deny [the plaintiff] access to the courts . . . ."); *Croom*, 2017 WL 3335762, at \*2 (determining that the plaintiff failed "to state a First Amendment access to courts claim against either of the defendants for failing to provide [the p]laintiff with grievance forms . . . ."); *Moore v. Trierweiler*, No. 2:15-CV-141, 2015 WL 7722037, at \*3 (W.D. Mich. Nov. 30, 2015) (finding that the plaintiff could not state an access to courts claim based on the alleged denial of access to the grievance process).

### 2.    Due Process

Defendants next argue that Plaintiff has failed to identify the basis of his Fifth Amendment claim or to allege how Warden and Unit Manger's conduct violates the Fifth Amendment.  (doc. 15 at 8 n.3, 24 n.10.)  Plaintiff's response clarifies that his Fifth Amendment due process rights were violated when Counselor interfered with the administrative remedy process, and Defendants contend that he "cannot establish that he has a protectable interest in the administrative grievance

---

[11] Because Defendants are entitled to dismissal of Plaintiff's First Amendment access to courts claim against Counselor on this basis, it is unnecessary to reach their additional argument that such claims cannot be asserted under *Bivens*.  (*See* doc. 15 at 20-24.)

procedures." (docs. 25 at 20; 28 at 7.)[12]

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981));[13] *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property")).

Although Plaintiff asserts that his due process rights were violated by interference with the administrative grievance procedure, the Fifth Circuit has held that there is no constitutionally "protected liberty interest in the processing of . . . prison grievances." *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)); *see Mayfield v. Wilkinson*, 117 F. App'x 939, 940 (5th Cir. 2004) (finding that a prisoner was not "constitutionally entitled to an administrative grievance procedure."). Accordingly, Plaintiff's claim under the Fifth Amendment based on Counselor's alleged interference with the administrative remedy process should be dismissed for failure to state a claim. *See Morgan v. Patterson*, No. 2:17-CV-160, 2017 WL 7732439, at *12–13 (S.D. Tex. Aug. 8, 2017) (finding that due process claims

---

[12] Notably, although Plaintiff alleges that his Fifth Amendment rights were violated based on Counselor's actions, he appears to assert his Fifth Amendment claim against only Warden and Unit Manager. (*See* docs. 3 at 6; 25 at 20.)

[13] *Zinermon* was a § 1983 case applying the Due Process Clause of the Fourteenth Amendment. *See Zinermon*, 494 U.S. at 125. The Fifth Circuit has recognized, however, that the constitutional torts authorized by § 1983 and *Bivens* are "coextensive." *Izen v. Catalina*, 382 F.3d 566, 570 n.3 (5th Cir. 2004) *on reh'g*, 398 F.3d 363 (5th Cir. 2005); *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) ( "*Bivens* is the federal counterpart of § 1983.").

based on a prison's grievance process should be dismissed), *adopted by* 2018 WL 942458 (S.D. Tex. Feb. 15, 2018); *Dietz v. Hayes*, No. 6:12-CV-2010, 2012 WL 6967598, at *4 (W.D. La. Nov. 8, 2012) (citing cases) (recommending dismissal of constitutional claims for failure to state a claim where they were based on the plaintiff's dissatisfaction with responses to his grievances), *adopted by* 2013 WL 395857 (W.D. La. Jan. 30, 2013).

### 3.    Cruel and Unusual Punishment

Defendants finally argue that Plaintiff's cruel and unusual punishment claims against Warden and Unit Manager should be dismissed because his factual allegations "do not give rise to a violation of the Eighth Amendment." (doc. 15 at 24-28.)

The Eighth Amendment "'guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'" *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)); *see Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004). While "the Constitution does not mandate comfortable prisons, [ ] neither does it permit inhumane ones." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (internal quotations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "[M]erely uncomfortable heat in a prisoner's cell does not reflect a basic human need that the prison has failed to meet," however. *Id.* at 592 (internal citation and quotation marks omitted) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)). Rather, extreme heat in prison cells amounts to a constitutional violation when it poses "an unreasonable risk of serious damage to a prisoner's health" and prison officials act with deliberate indifference to the risk.[14] *Id.*; *see Hinojosa*, 807 F.3d

---

[14] Showing deliberate indifference "requires more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665 (citing *Farmer*, 511 U.S. at 835–36).

at 665.  "[A] prison official acts with deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Hinojosa*, 807 F.3d at 665 (quoting *Farmer*, 511 U.S. at 837).  "Whether a risk is substantial and the threatened harm is serious represents an objective test; whether prison officials consciously disregarded the risk represents a subjective one."  *Id.* (citing *Ball*, 792 F.3d at 592).

Here, Plaintiff alleges that he is confined in a housing unit with no air conditioning and only one fan, where "[t]emperatures regularly reach 110[ degrees] and cause [him] extreme physical distress including inability to sleep at night."  (doc. 3 at 6.)  He claims that due to his morbid obesity, diabetes, and thyroid condition, he has a "heightened risk of serious physical injury" due to the excessive heat in his unit.  (*Id.*)  He further claims that inmates die "every year as a result of these conditions."  (*Id.*)  He asserts that the excessive heat violates his Eighth Amendment rights, and that Warden and Unit Manger deliberately refused "to afford due consideration to his serious needs."  (*Id.*)  He "fear[s] that [his] health and life are at imminent risk of harm from exposure to these unsafe conditions."  (*Id.*)

The Fifth Circuit has held that an inmate "need not show that death or serious injury has already occurred," rather, "[t]hey need only show that there is a substantial risk of serious harm."  *Hinojosa*, 807 F.3d at 666 (quoting *Ball*, 792 F.3d at 593).  Plaintiff's allegations that he is "especially susceptible to the health risks of extreme heat" due to his medical conditions and that the extreme temperatures cause him "extreme physical distress" and put him at a "heightened risk of serious physical injury" are sufficient to plausibly show a substantial risk of serious harm.  *Martone v. Livingston*, No. 4:13-CV-3369, 2014 WL 3534696, at *6 (S.D. Tex. July 16, 2014); *see*

19

*Ball*, 792 F.3d at 593–94 (finding that "the district court plausibly concluded that the [p]laintiffs . . . [were] at a substantial risk of serious harm" where they suffered from diabetes and hypertension); *Hinojosa*, 807 F.3d at 666 (finding a substantial risk of serious harm where inmates had medical conditions and temperatures routinely exceeded 90 degrees).

Although Plaintiff has alleged facts showing that he was at "a substantial risk of serious harm," he must also show that the prison officials acted with deliberate indifference to that risk. *Ball*, 792 F.3d at 592; *Hinojosa*, 807 F.3d at 665. Plaintiff's allegations fail to show that Warden and Unit Manager knew of and disregarded an excessive risk to his safety. *See Hinojosa*, 807 F.3d at 665. He fails to plead any facts regarding Warden or Unit Manager's knowledge other than stating that he requested to be moved to a different unit and requested air conditioning in his unit, but his requests "for administrative relief cannot alone prove deliberate indifference." *Ball*, 792 F.3d at 595; *see Brumfield v. Goodwin*, No. 16-CV-1197, 2018 WL 1190628, at *5 (W.D. La. Feb. 20, 2018) (citing *Ball*, 792 F.3d at 595) (recognizing that "receipt of a grievance does not, alone, prove deliberate indifference"), *adopted by* 2018 WL 1190226 (Mar. 7, 2018). Although he claims that "inmates die [t]here every year," he does not allege any facts to support this conclusory claim. Without more, his claims do not show how Warden or Unit Manager knew of and disregarded any risks resulting from the alleged excessive heat in his unit. *See Walker v. Davis*, No. 6:17cv166, 2019 WL 2465298, at *9 (E.D. Tex. Jan. 10, 2019) (finding that vague and general allegations were insufficient to support a finding of deliberate indifference), *adopted by* 2019 WL 1421152 (E.D. Tex. Mar. 28, 2019). Accordingly, Plaintiff's allegations fail to show how Warden and Unit Manager were deliberately indifferent to any substantial risk of serious harm. *Payne v. Almanza*, No. 1:18-CV-0175-BL, 2019 WL 1932760, at *9–10 (N.D. Tex. May 1, 2019) (determining that the

plaintiff's allegations failed to show deliberate indifference) *Walker*, 2019 WL 2465298, at *9 (same); *compare Martone*, 2014 WL 3534696, at *6 (finding deliberate indifference where the plaintiff alleged that the defendants had actual knowledge of the risk of harm and that the defendants failed to adopt a policy to reduce that risk).

Because Plaintiff has failed to plead enough facts to meet the second element, his Eighth Amendment claims against Warden and Unit Manager should be dismissed for failure to state a claim. *Ball*, 792 F.3d at 592 ("Without the requisite proof of both subjective and objective components of an Eighth Amendment violation," a plaintiff cannot establish a constitutional violation); *see Walker*, 2019 WL 2465298, at *9–10 (dismissing Eighth Amendment excessive heat claim for failure to state a claim where the plaintiff did not plead sufficient facts to show deliberate indifference).

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. Courts, nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995),

or if it finds that the plaintiff has alleged his or her best case, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). When a court "outline[s] in [its] opinion the deficiencies" of plaintiff's complaint and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at *2–3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Here, Plaintiff has not amended his complaint, and it does not appear that he has alleged his best case with regard to his Eighth Amendment claim. While he would be unable to successfully state a claim for relief under the First or Fifth Amendments even if granted an opportunity to amend on those claims due to the lack of a constitutionally protected interest in the processing of prison grievances, he should be accorded an opportunity to amend his complaint to sufficiently state a claim upon which relief can be granted for his Eighth Amendment claim against Warden and Unit Manager.

## V. RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allotted for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim. If Plaintiff timely files an amended complaint, however, the motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 30th day of July, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

23