IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUAN LORENZO BARELA, JR., ) | | |
| ID #58747-051 ) | | |
|     Plaintiff, ) | | |
| vs. ) | No. 3:18-CV-2353-G-BH | |
| ) | | |
| M. UNDERWOOD, WARDEN, et. al., ) | | |
|     Defendants. ) | Referred to U.S. Magistrate Judge[1] | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are the plaintiff's *Motion for Leave to File First Amended Complaint*, filed on September 30, 2019, (doc. 46), and *Plaintiff's Motion for Relief from Judgment*, filed October 8, 2019, (doc. 48). Based on the relevant filings and applicable law, the motion for leave to amend should be **DENIED** as futile, and the motion for relief from judgment should be **DENIED**.

## I. BACKGROUND

Juan Lorenzo Barela, Jr., (Plaintiff), an inmate in the Federal Correctional Institute at Seagoville (FCI-Seagoville), Texas, sued M. Underwood (Warden) and E. Johnson (Unit Manager) for violations of his Fifth and Eighth Amendment rights, and A. Guzman (Counselor) (collectively, Defendants) for violations of his First Amendment rights. (doc. 3 at 1, 3.)[2] He claimed that because he is obese and diabetic and suffers from hyperparathyroidism, neuropathy and back pain, he was required "to be housed on the bottom floor and in a lower bunk, according to the determinations of Health Services . . . at FCI-Seagoville." (*Id*. at 6.) The housing unit in which he was then confined did not have air conditioning, and he made repeated requests for air conditioning "because the heat adversely affected his ability to manage his diabetes." (*See id.*) Plaintiff claimed that "the excessive

---

[1]By *Special Order 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page.

heat to which [he was] forcibly exposed [was] a potential violation . . . of [his] Eighth Amendment right to freedom from cruel and unusual punishment," as well as his "Fifth Amendment right to protection from the taking of [his] life or any liberty interest without due process of law." (*Id.*) He asserted that the Warden and Unit Manager deliberately refused "to afford due consideration to [his] serious needs." (*Id.*) He also claimed that Counselor violated his First Amendment rights "with respect to [his] ability to pursue grievances and access the courts . . . ." (*Id.*) Plaintiff alleged that he "completed all available administrative remedies . . . ." (*Id.*)

On December 3, 2018, Defendants moved to dismiss all of Plaintiff's claims for failure to state a claim, failure to overcome their qualified immunity defense, and failure to exhaust administrative remedies. (docs. 14; 15.) On July 30, 2019, it was recommended that Plaintiff's claims be dismissed for failure to state a claim, but that he be given an opportunity to amend his complaint to allege his best case with regard to his Eighth Amendment claim. (doc. 38 at 13-23.) It was also recommended that his complaint be dismissed for failure to state a claim if he did not file an amended complaint. (*Id.*)

On August 15, 2019, Plaintiff moved for extension of time, alleging that he had not received the recommendation until August 8, 2019. (doc. 38.) His motion was granted the next day, and his deadline to file objections or an amended complaint was extended until August 30, 2019. (doc. 40.) On September 4, 2019, Plaintiff filed a second motion for extension of time, alleging that he had not received an answer to his first motion. (doc. 42.) His motion was granted, and the deadline for filing his objections or an amended complaint was extended until September 20, 2019. (doc. 43.) On September 23, 2019, the recommendation was accepted, and all of Plaintiff's claims against Defendants were dismissed for failure to state a claim. (doc. 44.)

On September 30, 2019, Plaintiff's motion for leave to file a first amended complaint, which

2

was dated September 20, 2019, was received. (doc. 46.) He sought to add official capacity claims against Warden and Unit Manager, and a claim against the United States of America under the Federal Tort Claims Act (FTCA), for violations of his Eighth Amendment right to freedom from cruel and unusual punishment, deliberate indifference to his serious medical needs, and failure to provide reasonably adequate "care in response to his requests and plainly apparent need for medical surgery to treat a life-threatening thyroid condition[]." (*Id.* at 3-4.) He again alleged violations of his First and Eighth Amendment rights and continued to allege that Counselor violated his rights to "free expression and to petition the government for redress of grievances when he suppressed, obstructed, and retaliated against his attempts and efforts to exercise said rights." (*Id*. at 2-3.) He also continued to allege that Warden and Unit Manager were deliberately indifferent to the substantial risk of serious harm to his health and safety when they failed "to reasonably respond to his claim of exposure to excessive heat." (*Id.*)

Plaintiff reasserted his contentions that he had informed Warden and Unit Manager that he had health conditions, and that the "excessive heat made it impossible to sleep and that he was often later unable to wake for his morning insulin." (*Id.* at 8.) He claims Warden responded to his BP-9 form by saying that the building in which Plaintiff was housed was "properly equipped with sufficient air changes per hour to meet . . . policy requirements ." (*Id*. at 11.)  He also informed Plaintiff that Unit Manager would continue to monitor the building to ensure that inmates were "provided a safe and healthy living environment." (*Id.* at 12.)  Plaintiff also added allegations that an inmate died from heat stroke, that "78 other people in the TDCJ system reportedly suffered heat-related illness," and that Warden and Unit manager received internal Bureau of Prisons (BOP) bulletins, read news stories, "and discussed anecdotes with associates, making them aware of the actual dangers of heat in Texas prisons[]." (*Id.* at 7.)

3

Plaintiff also added allegations that he submitted an Informal Resolution Form to Counselor alleging a failure to "provide adequate and reasonable treatment for his hyperparathyroidism." (*Id*. at 17.) He submitted an administrative tort claim on November 27, 2018, that was received by the BOP South Central Regional Office on November 30, 2018. (*Id*. at 19.) The claim alleged that Plaintiff had been awaiting treatment for "a parathyroid condition which causes excessive calcium production and increase[d] [his] risk of stroke, death, and other harmful effects," and that the calcium buildup caused him pain in his knee, but he had "been afforded no effective treatment" despited repeated reports. (*Id*. at 19-20.) He also claimed that when he was approved to see an otolaryngologist for his parathyroid condition, he was unable to be treated because "the medical records, reports, charts, scans, etc., were too old and needed to be updated before he could be treated." (*Id*. at 20.)

Plaintiff seeks monetary damages and "injunctive relief directing the cessation of the violations of his rights and declaratory relief asserting the fact of said violations." (*Id.*)

On October 8, 2019, Plaintiff filed a motion for relief from judgement alleging that he timely filed his amended complaint as directed. (doc. 48.)

## II.  MOTION FOR LEAVE TO AMEND

Plaintiff moves for leave to file his first amended complaint in response to the report and recommendation issued on July 30, 2019. (*See* doc. 38; 46 at 1.)

**A.**     **Pre-judgment Motion**

To the extent that the motion is considered filed before the entry of judgment based on the mailing date, it should be denied as futile. When a responsive pleading has not been filed, Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend his pleading once as a matter of course within 21 days after serving it, and otherwise with either the opposing party's written

4

consent or the court's leave. Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982). A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend should not be denied unless there is a *substantial reason* to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

   1.   **First Amendment**

Plaintiff's proposed amended complaint reasserts his claim that Counselor violated his First Amendment rights to "free expression and to petition the government for redress of grievances[]." (doc. 46 at 3.) He adds allegations that Counselor also wrongfully obstructed his attempts to file other grievances. (*See id*. at 14-17.) The mishandling of grievance processes by a prison official "does not give rise to a First Amendment claim for denial of access to the courts." *West v. Putman*, No. 2:18-CV-71, 2018 WL 4211749, at *4 (S.D. Tex. Apr. 12, 2018) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)); *Croom v. Doe*, No. 17-CV-632-NJR, 2017 WL 3335762, at *2 (S.D. Ill. Aug. 3, 2017). Moreover, the Fifth Circuit has held that there is no constitutionally "protected liberty interest in the processing of . . . prison grievances." *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)); *see also Mayfield v. Wilkinson*, 117 F. App'x 939, 940 (5th Cir. 2004) (finding that a prisoner was not "constitutionally

5

entitled to an administrative grievance procedure."). Even considering the additional allegations, Counselor's alleged obstruction of his attempts to file grievances "did not deprive him of his ability to bring his underlying constitutional claims in federal court," so Plaintiff's proposed amended complaint still fails to state a cognizable claim under the First Amendment. *West*, 2018 WL 4211749, at *4 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991)). Amendment of this claim would be futile.

### 2. *Eighth Amendment*

Plaintiff's proposed amended complaint reasserts his claim that Warden and Unit Manager were deliberately indifferent to the substantial risk of serious harm to his health and safety from exposure to excessive heat. (*See* doc. 46 at 3.) It reasserts his contentions that he informed Warden and Unit Manager that he was unable to sleep and wake up on time to take his insulin because of the excessive heat, and that he made several requests to be moved to housing with air conditioning due to the excessive heat. (*Id*. at 8-9.) He claims that Warden and Unit Manager were aware that an inmate died from heat stroke, and that "78 other people in the TDCJ system reportedly suffered heat-related illness."[3] (*Id*. at 7.)

The Fifth Circuit has held that the "extremely high standard" of deliberate indifference requires that prison officials "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Plaintiff's

---

[3] Plaintiff does not allege that the inmate who died was housed at FCI-Seagoville, and he specifically alleges that the 78 inmates who suffered heat related illnesses were state prisoners, not federal inmates. (*See* doc. 46 at 7.)

6

complaint alleges that Warden responded to his grievance and informed him that the building was properly equipped with sufficient air changes per hour to meet policy requirements and that Unit Manager would continue to monitor the building to provide "a safe and healthy living environment." *See Blackmon v. Kukua*, 758 F. Supp. 2d 398, 411 (S.D. Tex. 2010) (maintenance supervisor did not act with deliberate indifference to prisoner's health, where he investigated prisoner's complaint of gave appropriate response); *see also Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) (a request for administrative relief cannot alone prove deliberate indifference). It alleges that Warden also informed Plaintiff that fans were available for purchase. "[A]ctions and decisions by prison officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Hernandez v. Tex. Dep't of Protective & Reg. Servs.*, 380 F.3d 872, 883 (5th Cir. 2004) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)); *see also Dyer v. Houston*, 955 F.3d 501, 507 (5th Cir. 2020) ("deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."). Plaintiff fails to allege facts that show Defendants were deliberately indifferent to a substantial risk of serious harm.

  Plaintiff also fails to allege sufficient facts to show that Warden and Unit Manager actually drew the inference that there was a substantial risk of serious harm to him by not moving him to another air conditioned building. *See Correa v. Dretke*, 122 F. App'x 112, 114 (5th Cir. 2005) ("Although [the plaintiff] alleged facts showing [the defendant] was aware of facts from which she could draw the inference that a substantial risk of harm existed, he did not allege facts showing [the defendant] actually drew that inference. This is, therefore, insufficient to state a claim for deliberate indifference."); *see also Taylor v. Collier*, No. 3:17-CV-358, 2019 WL 1383021, at *8 (S.D. Tex. Mar. 26, 2019), *appeal dismissed*, No. 19-40302, 2019 WL 5067293 (5th Cir. June 13, 2019) (the plaintiff failed to demonstrate that the defendants acted with deliberate indifference to a substantial

risk of serious harm to his health from high temperatures in his housing unit where no medical professional ordered any heat-related restriction on his housing and they were bound by the Plaintiff's housing forms).

Plaintiff's proposed amended complaint fails to allege sufficient facts to state a plausible claim that Warden and Unit Manager were deliberately indifferent to a substantial risk of serious harm. Amendment of his Eighth Amendment claim would therefore be futile.

### 3. *Official Capacity Claims*

Plaintiff's proposed amended complaint seeks to add official capacity claims against Warden and Unit Manager. (doc. 46 at 3.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A *Bivens* action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States. *Affiliated Prof' l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir.1999). Nor may a *Bivens* action be brought against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994); *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir.1995). This is because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Because a *Bivens* action cannot be brought against the United States, a federal agency, or individual employees in their official capacities, permitting Plaintiff to amend his complaint to

8

add *Bivens* claims against Warden and Unit Manager in their official capacities would be futile.[4]

### 4. FTCA

Plaintiff seeks to add a claim under the FTCA against the United States for violations of his Eighth Amendment right to be free from cruel and unusual punishment, deliberate indifference to a serious medical need, and failure to provide reasonablely adequate care in response to a need for surgery. (*See* doc. 46 at 3-4.) He alleges that the United States, through its agents, "conducted his case with such negligence, indifference, and extraordinary delay, that by the time Plaintiff's scheduled surgery appointment finally came up," the prerequisite medical work was so outdated that the doctor could not proceed with treatment. (*Id.* at 20.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). In the FTCA, Congress waived the United States' sovereign immunity for claims arising from torts committed by federal employees. 28 U.S.C. §§ 1346(b)(1), 2671-2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). To successfully sue under the FTCA, a claim must be: 1) against the United States; 2) for money damages; 3) for injury or loss of property, or personal injury or death; 4) caused by the negligent or wrongful act or

---

[4]To the extent that Plaintiff seeks to bring a claim against Warden and Unit Manager in their official capacities under the FTCA, the claim would be treated as a suit against the United States. *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010) (citing *Boehms v. Crowell*, 139 F.3d 452, 462–63 (5th Cir.1998); *S Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981)); *Connor v. Matthews*, 134 F.Supp.2d 797, 799 (N.D. Tex. 2001). The only proper defendant in an FTCA action is the United States. *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir.1988). Because he also seeks to sue the United States under the FTCA, any amendment to also sue the Warden and Unit Manager would likewise be futile.

9

omission of any employee of the federal government; 5) while acting within the scope of his or her employment; and 6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477-78.[5]

Here, Plaintiff's proposed FTCA claim is expressly based in part on Warden and Unit Manager's alleged constitutional violations of his rights under the Eighth Amendment by failing to reasonably respond to his claim of exposure to excessive hearing. (doc. 46 at 4.) His claim is also expressly based on the alleged violation of his Eighth Amendment right through deliberate indifference to his serious medical needs. (*Id.*) "[S]uits for violations of federal constitutional rights, even though tortious in nature, are not within the scope of the FTCA," however. *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989); *see also Vuksich v. United States*, 291 F. App'x 587, 589 (5th Cir. 2008). His proposed amended complaint therefore fails to state a claim under the FTCA, and granting leave to amend to add it would be futile.

Plaintiff also alleges that the United States, through its agents, "conducted his case with such negligence, indifference, and extraordinary delay, that by the time Plaintiff's scheduled surgery appointment finally came up," the prerequisite medical work was so outdated that the doctor could not proceed with treatment. (doc. 46 at 20.) Although his general allegations of negligence appear intended to support his claim that the defendants violated his Eighth Amendment rights, Plaintiff still fails to state a claim under the FTCA even if his allegations are liberally construed as asserting a claim of negligence within its scope because he has failed to allege any physical injury resulting

---

[5]Plaintiff alleges that he filed an administrative tort claim that was "acknowledged received by the BOP South Central Regional Office on November 30, 2018[.]" (doc 46 at 19.) Defendants do not dispute that Plaintiff exhausted his administrative remedies prior to seeking to add a claim under the FTCA. (*See* doc. 49 at 24.)

from any delay in providing him surgery for his hyperparathyroidism. He only claims that the calcium buildup caused him pain in his knee. (*See id.*)

"The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (citing 28 U.S.C. §§ 1346(b), 2674). Under Texas law, when the negligence alleged is in the nature of medical malpractice, the plaintiff has the burden of proving (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *See id.; see also Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Here, Plaintiff's proposed complaint fails to allege facts supporting the elements of his claim, and in particular, it fails to allege that he has suffered any injury as a result of the delay in providing him surgery for his hyperparathyroidism.

In *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001), the prisoner plaintiff alleged that his Eighth Amendment rights were violated when he was exposed to asbestos while in prison, and he sought money damages for the mental and emotional distress caused by his knowledge of his increased risk of developing an asbestos-related illness. The Fifth Circuit concluded that as a matter of law, he was not entitled to money damages for physical injury where he had failed to allege such injury, and that as a result of the failure to allege a physical injury, recovery of money damages for mental and emotional distress was precluded by 42 U.S.C. § 1997e(e). *Id.* at 666. Section 1997e(e) provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although *Herman* was a civil

11

rights case, courts in this circuit have found that § 1997e(e) likewise applies in FTCA actions and "prohibits an inmate from filing suit against the United States for mental or emotional injury absent a prior showing of physical injury." *Weathington v. Bureau of Prisons*, No. 09-CV-0705, 2010 WL 545294, at *1 (W.D. La. Feb. 11, 2010) (citing 28 U.S.C. § 1346(b)(2)[6] and *Herman*, 238 F.3d at 665); *see also Wooderts v. United States*, No. 4:10-CV-423-Y, 2011 WL 4448745, at *2 (N.D. Tex. Sept. 26, 2011) ("The Fifth Circuit [has] held that an inmate's FTCA monetary damages claims, lacking allegation of a physical injury, [are] barred by § 1997e(e).") (citing *Stephens v. Yusuff*, 95 F. App'x 78 (5th Cir. 2004) (affirming dismissal of FTCA and *Bivens* claims for mental suffering for failure to state a claim where recovery of damages was barred by § 1997e(e) because the plaintiff failed to allege a physical injury)); *Mitchell v. United States*, No. Civ. A. C-05-361, 2005 WL 3445607, at *3-4 (S.D. Tex. Dec. 15, 2005) (finding that because the plaintiff could not establish a prior physical injury, he was barred by § 1997e(e) from seeking damages for emotional or mental distress under the FTCA) . Where, as here, an FTCA action fails to allege any injury or loss, it may properly be construed as an action for mental or emotional injury. *See West v. United States*, 729 F. App'x 145, 148-49 (3d Cir. 2018) (finding that an FTCA action that failed to allege any injury or loss was properly construed as an action for mental or emotional injury only subject to § 1997e(e)). Since he has alleged no injury in this case, Plaintiff's proposed FTCA action may be construed as an action for mental or emotional injury based on his knowledge of the potential consequences of the failure to receive surgery. *See id.* Because his claim for damages is barred by § 1997e(e) in the absence of an alleged injury, he fails to state a claim under the FTCA. *See*

---

[6]Section 1346(b)(2) states, in relevant part, that "[n]o person convicted of a felony who is incarcerated . . . while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 28 U.S.C. § 1346(b)(2).

*Stephens*, 95 F. App'x at 78.

Moreoever, any alleged physical injury must be more than *de minimis* in order to support a claim for monetary damages. *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (per curiam) (citing § 1346(b)(2) and *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that in the absence of a definition of "physical injury" in § 1997e(e), the "well-established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering," which means that the injury must be more than *de minimus* but need not be significant)). A physical injury sufficient to support an award for compensatory damages must be an "observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D.Tex.1997). Plaintiff's allegations of knee pain only state a *de minimus* injury and are therefore insufficient to support the existence of a physical injury for purposes of his FTCA claim. *See Sublet v. United States*, No. 2:08 CV 1410, 2011 WL 690533, at *3 (W.D.La. Jan. 28, 2011)(finding that alleged numbness and tenderness in hand and arm as a result of tight handcuffs was "clearly not a sufficient physical injury to support a claim for compensatory damages" under the FTCA), *aff'd*, *Sublet*, 451 F. App'x at 459; *see also Jarriett v. Wilson*, 162 F. App'x 394, 400-01 (6th Cir. 2005) (finding prisoner's allegations that his leg became very swollen, "like a grapefruit," that he suffered pain while standing, and that he had severe cramps in his thighs when he tried to sit only stated a *de minimus* injury for purposes of § 1997e(e)) (citing *Siglar,* 112 F.3d at 193).

In conclusion, amendment of the complaint to add Plaintiff's FTCA claim would be futile because the claim is subject to dismissal for failure to state a claim.

B.      **Post-judgment Motion**

A post-judgment motion to amend a complaint may only be granted if a judgment is first vacated under Rule 59 or 60, and it should be denied unless a plaintiff clearly establishes that he could not raise the new evidence or argument prior to judgment. *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000). At issue, then, is whether Plaintiff has met the requirements for relief under Rule 59(e).

### III.  RULE 59(e) MOTION

Plaintiff seeks relief from judgment on grounds that his motion for leave to file his first amended complaint was timely. (doc. 48 at 1.)

To prevail on a motion to alter or amend a judgment under Rule 59(e), the moving party must show (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact. *See Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Although courts have "considerable discretion" to grant or to deny a Rule 59(e) motion, they use the "extraordinary remedy" under Rule 59(e) "sparingly." *Id*. at 479, 483. When considering a motion to alter or amend judgment, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

Here, Plaintiff alleges that the judgment should be vacated based on his timely filing of his

14

motion for leave to file his first amended complaint. (doc. 48 at 1.)[7]  As noted, his suit for monetary damages for violations of his First, Fifth, and Eight Amendment rights was dismissed for failure to state a claim. (*See* doc. 38 at 22.)  His amended complaint essentially re-urges the same claims raised in his prior complaint. *N. Cypress Med. Ctr. Operating Co. v. Blue Cross Blue Shield of Texas*, 2010 WL 2245075, at *1 (S.D. Tex. Jun. 2, 2010) ("It is not proper to use Rule 59(e) to re-litigate or get 'a second bite of the apple' on previously addressed issues by the parties or the Court.").  While he disagrees with the initial decision, he has been given a fair opportunity to present all of his claims.  His proposed amended complaint, including his new proposed FTCA claim, has been fully considered, but it still fails to state a claim.  Plaintiff fails to identify an intervening change in controlling law, point out the availability of new evidence not previously available, identify a manifest error of law or fact, or identify any other extraordinary circumstances justifying alteration or amendment of the judgment of dismissal.  Because he has not shown that the extraordinary relief provided by Rule 59(e) is justified in this case, Plaintiff's Rule 59(e) motion should be denied.

## IV.  RECOMMENDATION

The plaintiff's *Motion for Leave to File First Amended Complaint*, whether construed as a pre-judgment or post-judgment motion for leave to amend his complaint, should be **DENIED** as futile, and his *Motion for Relief from Judgment* should be **DENIED**.

---

[7]Prisoners' federal pleadings are considered filed on the date they are placed in the prison mail system. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Brown v. Taylor*, No. EP-13-CV-00017-FM, 2018 WL 9866510, at *2 (W.D. Tex. Jan. 11, 2018) (finding complaint that was placed in the prison mail system by the deadline for amended pleadings timely based on the prison mailbox rule).

**SO RECOMMENDED this 9th day of July, 2020.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE